**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2888-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GARY WARD, a/k/a GARY W.
WARD, GARY W. WARD, II,
and GARY WESTLEY MCCOY
WARD, JR.,

     Defendant-Appellant.

_____

Submitted March 4, 2020 – Decided March 12, 2020

Before Judges Haas and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-01-0224.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele Erica Friedman, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Steven K. Cuttonaro, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

After the trial court denied his motion to suppress a handgun seized in plain view from his car, defendant Gary Ward pled guilty to second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b). In accordance with the negotiated plea, the court sentenced defendant to seven years in prison, subject to a forty-two month period of parole ineligibility.

On appeal, defendant raises the following contentions:

> POINT I
>
> THE MOTION COURT ERRED IN RULING THAT THE DETECTIVE'S WARRANTLESS SEIZURE OF EVIDENCE IN THE FLOORBOARD OF THE CAR WAS CONSTITUTIONAL.
>
> POINT II
>
> THE MATTER SHOULD BE REMANDED FOR RESENTENCING BECAUSE THE COURT ERRED IN FINDING AND ASCRIBING UNDUE WEIGHT TO AGGRAVATING FACTORS THREE, SIX, AND NINE.

After reviewing the record in light of the contentions advanced on appeal, we affirm.

I.

At approximately 11:40 p.m. on November 9, 2015, Detective Trevor Forde was on patrol with four other officers in Newark. The detective saw

2

defendant drive his car through a stop sign, and also observed he was not wearing a seatbelt. Based on these clear traffic violations, Detective Forde executed a motor vehicle stop of defendant's car.[1]

As he approached the car, Detective Forde saw defendant bending down in the driver's seat and he "appear[ed] to be stuffing something somewhere near the floor area of the car." Because defendant was making these furtive movements, the detective believed he was "trying to conceal an object or some type of contraband."

Fearful that defendant was trying to hide a weapon, Detective Forde repeatedly ordered defendant and the other passengers to raise and show him their hands. Defendant and the passengers complied. When he got to the driver's side door, the detective "noticed an object underneath the seat protruding." Detective Forde testified at the suppression hearing that the object had a "black handle" that "was consistent with a possible hand gun."

Detective Forde immediately notified the other officers he had seen a handgun so they would "be wary of the driver." He then ordered defendant and the passengers to get out of the car and opened the driver's side door so he could keep an eye on defendant's hands in order to protect himself and the other

---

[1] There were two other passengers in defendant's car.

officers.  After the door was opened, Detective Forde confirmed that the object was a gun, and another officer removed it from the car.

The police arrested defendant and, as he was handcuffed, defendant "blurted out" that the gun belonged to him.  After conducting a records check, the police released the passengers.

At the conclusion of the hearing, the trial judge denied defendant's motion to suppress the handgun the police seized from his car.  In a thorough oral opinion, the judge found that the police had a reasonable basis for stopping defendant's car after he ran the stop sign.  The judge also determined that Detective Forde credibly testified that he observed defendant make a series of furtive movements indicating an attempt to conceal something in the floor area of the car.  When the detective reached the car, he could see an object under the seat which he believed was a gun.  The judge found that after properly ordering defendant to get out of the car and opening the driver's door, the detective confirmed that the object was a handgun by again observing it in plain view. Therefore, the judge concluded that the seizure of the weapon was proper.

II.

In Point I of his brief, defendant asserts that the trial judge erred by denying his motion to suppress the handgun seized from his car.  We disagree.

4

Our review of a trial judge's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). In reviewing a motion to suppress evidence, we must uphold the judge's factual findings, "so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting Robinson, 200 N.J. at 15). Additionally, we defer to a trial judge's findings that are "substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Ibid. (alteration in original) (quoting Robinson, 200 N.J. at 15). We do not, however, defer to a trial judge's legal conclusions, which we review de novo. Ibid.

The police may, without a warrant, temporarily detain a person if they have a reasonable and articulable suspicion that the person is engaged in unlawful activity. State v. Elders, 192 N.J. 224, 247 (2007). Similarly, the police may stop a motor vehicle based on a "reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed." State v. Amelio, 197 N.J. 207, 211 (2008). The State bears the burden of establishing by a preponderance of the evidence that it possessed sufficient information to give rise to a reasonable and articulable suspicion. Ibid.

Here, Detective Forde saw defendant drive his car through a stop sign while not wearing a seatbelt. These obvious traffic violations in the detective's presence gave him a reasonable basis for stopping defendant's car. Ibid.

As he approached the car, defendant began making furtive movements that the detective interpreted as an attempt to hide an object or contraband on the floor of the car. From outside the car, Detective Forde could see the black handle of what he believed was a gun under the seat and alerted the other officers of the danger. The detective ordered defendant to get out of the car and opened defendant's door to effectuate his removal.

As the trial judge correctly found, the detective was plainly justified in directing defendant to exit the car. State v. Bacome, 228 N.J. 94, 104 (2017) (noting that the United States Supreme Court has held since 1977 that it is "objectively reasonable for officers to order a driver out of a lawfully stopped vehicle, finding removal only a minor intrusion into a driver's personal liberty") (citing Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977)); see also State v. Pena-Flores, 198 N.J. 6, 31 n.7 (2009) (describing right of officer to remove driver from lawfully stopped vehicle as "established precedent"). Because Detective Forde was justified in ordering defendant to get out of the car, he was also permitted to open defendant's door to effectuate his order. State v. Mai,

202 N.J. 12, 22-23 (2010) (noting that "no meaningful or relevant difference exists between the grant of authority to order an occupant of a vehicle to exit the vehicle and the authority to open the door as part of issuing that lawful order").

Once the door was opened, Detective Forde confirmed that the black-handled object was a gun, an observation that was further confirmed by another officer who then removed the gun from the car once defendant exited it. Under these circumstances, the judge concluded that the gun was in detective's plain view and, accordingly, was properly seized.

The rationale of the plain view doctrine is that "a police officer lawfully in the viewing area" should not be required to "close his [or her] eyes to suspicious evidence in plain view." State v. Johnson, 171 N.J. 192, 207 (2002) (quoting State v. Bruzzese, 94 N.J. 210, 237 (1983)). Under the plain view exception to the warrant requirement in effect at the time the police seized defendant's handgun from the car,[2] three requirements had to be satisfied:

> First, the police officer must be lawfully in the viewing area.
>
> Second, the officer has to discover the evidence "inadvertently," meaning that [the officer] did not know

_____

[2] On November 15, 2016, our Supreme Court held prospectively "that an inadvertent discovery of contraband or evidence of a crime is no longer a predicate for a plain-view seizure." State v. Gonzales, 227 N.J. 77, 82 (2016).

in advance where evidence was located nor intend beforehand to seize it.

Third, it has to be "immediately apparent" to the office that items in plain view were evidence of a crime, contraband, or otherwise subject to seizure.

[State v. Mann, 203 N.J. 328, 341 (2010) (quoting Bruzzese, 94 N.J. at 236).]

Contrary to defendant's contentions on appeal, these requirements were all met here. Detective Forde conducted a lawful traffic stop and observed defendant attempting to hide something on the floor of the car. Despite defendant's desperate efforts to avoid detection of the weapon, he left the black handle of the gun sticking out from under the seat. Once the detective saw the gun in plain view, he properly ordered defendant and the passengers to get out of the car, and opened the driver's door. In doing so, the detective was able to get an even better view of the object and confirmed at it was a handgun. At all times, Detective Forde was "lawfully in the viewing area"; did not know in advance that a gun would be found when he first saw it under the seat; and knew immediately it was "evidence of crime" from the fact it was a gun that defendant was frantically attempting to conceal. Ibid.

Therefore, we reject defendant's contentions on this point.

## III.

In Point II of his brief, defendant asserts that the trial court incorrectly evaluated the aggravating and mitigating factors in determining his sentence. See N.J.S.A. 2C:44-1(a) and 1(b). Again, we disagree.

Trial judges have broad sentencing discretion as long as the sentence is based on competent credible evidence and fits within the statutory framework. State v. Dalziel, 182 N.J. 494, 500-01 (2005). Judges must identify and consider "any relevant aggravating and mitigating factors" that "are called to the court's attention" and "explain how they arrived at a particular sentence." State v. Case, 220 N.J. 49, 64-65 (2014) (quoting State v. Blackmon, 202 N.J. 283, 297 (2010)). "Appellate review of sentencing is deferential," and we therefore avoid substituting our judgment for the judgment of the trial court. Id. at 65; State v. O'Donnell, 117 N.J. 210, 215 (1989); State v. Roth, 95 N.J. 334, 365 (1984).

We are satisfied the trial court made findings of fact concerning aggravating and mitigating factors that were based on competent and reasonably credible evidence in the record, and applied the correct sentencing guidelines enunciated in the Code. Accordingly, we discern no basis to second-guess the sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2888-18T1